BG Gulf Coast LNG v. Sabine-Neches Council, what do you say to someone who says that your way of looking at it conflates project feature with usable increment and that the statement, including a usable increment of the project, does not modify a harbor navigation project and that instead it, because of the nearest reference canon? Do you understand what I'm saying? Absolutely, yes, Your Honor. This whole project, you've got to have that part of the project, you can only collect for that, that that's not accurate. Yes, Your Honor. Well, in Section 2235, Congress said you can build a project in two ways. You can either go the entire project all at once or you can go one increment at a time. And then in 2236, Congress is saying you can charge for the entire project when it's done or you can go one increment at a time charging for that increment. And think about this, Your Honor. If including a usable increment of the project was defining when it's complete because it appears after complete, that interpretation would render all the words before it meaningless. Every project is going to have a usable increment. So if Congress wanted to create a trigger, all they needed to say was upon the completion of the usable increment, you get the levy of fee for everything. Or you could have just, but you can argue the converse. It could have said upon a usable increment, you can levy only for that which you've completed. It doesn't say either. And that's where we look to Plaquemines for guidance here. But Plaquemines doesn't really even speak to this. Well, it does. I mean, it has some language, but Plaquemines is not about this. It's about a totally different provision and it throws in a sentence just in general about how the A-1 works. But the case was an A-2 case. And so it's not really even... So let's just look at the text. How does the text go for you rather than for them? Because it doesn't say either. Well, Your Honor, if we accept the Court's argument that the text doesn't say either, I do think we can draw at least some persuasive lessons from Plaquemines. Because even though Your Honor is correct that it's an A-2 case, the in conjunction with language was relevant in that case. And the Court said there that the animating strategy behind Congress's enactment of 2236 was that only direct beneficiaries pay. A ship cannot benefit from something that is not built. Therefore, you build something to the point of usability. Now we're benefiting from it and you know which ships are benefiting from it and you levy a fee against those ships. Moreover, Your Honor, if you accept their interpretation, you would have to interpret the word costs, as it appears in the statute, to include budgeted, anticipated future costs. And finally, Your Honor, I want to address the point about to finance, which is a big point that they raise in their briefs, and I want to explain how we think only our interpretation makes sense. They rest on the word finance by arguing finance is purely prospective, that finance means you can charge before it's built. But finance doesn't really answer the question because I can go buy a house and finance a house that's already built or I can go borrow money to build a refinery that takes me two years to build and then start to pay it back after the fact. Finance doesn't answer the question. So what the court is left with is, in conjunction with, costs and placements. Those are the three concepts that answer the question. And finally, Your Honor, even if placements is not binding, the court can take from that decision the statement that the way 2236 works does create some financial difficulty for ports. But that's a feature, not a bug, in 2236. Can I... I have another question. Go for it. It will take us back to the 25% cap, unfortunately. Yes. Well, how is that claim ripe? You know, the district court dismissed a different claim as unripe, the claim about the ordinance covering all the construction costs, not just the non-federal share. So why can't the same be said of the 25% user fee? Because it's not been in effect long enough to even cover over $250 million. So why wouldn't it not be ripe for the same reason that the other claim was not ripe? And nobody's arguing this to us, but it troubled me. Yes, Your Honor. Because 2236B creates a private cause of action, and in that private cause of action, Congress said that somebody like us appellants who are affected by the user fee get to bring a challenge seeking judicial review of the proposed scheme or schedule in the appropriate district court. We are bringing a challenge to the ordinance as it is passed, promulgated today in black and white, and that ordinance says that they can levy a fee up to 40%, so we get to challenge it today, and the statute creates a 180-day limitations period. So we've got to bring our challenge to the ordinance as it's passed today within 180 days of its passage, otherwise we lose our private cause of action under 2236B. That's why we don't think there's a ripeness problem, Your Honor. How do we know that it will even get to the over 25%? Because the Navigation District has said they will levy fees all the way up to $488 million, and we've alleged, Your Honor, they're going to charge the 488, whether that ends up being 90% or 40% or 10%, they're going to go all the way to that 488. That's the problem, Your Honor. If they had an ordinance that said we will levy only 25%, whatever that amount ends up being, then maybe we wouldn't have that cause of action. But they've said we're going to collect the full 488. I have one more real quick. Yes, Your Honor. Why do we assume that Congress meant necessary to cover only what is required under 2211? Your Honor, because the word... Some other more general, like necessary to do the job, to complete the work, do the project, to get the project going. Yes, Your Honor, because the words in the statute say the requirements of Section 2211. So I'm reading from 2236A1, and if I can read the whole thing, the whole thing says, Port or harbor dues may be levied only in conjunction with a harbor navigation project whose construction is complete, including a usable increment, and now we get to the key language. And for the following purposes, and in amounts not to exceed those necessary to carry out those purposes. What are the purposes? Below that, AI says, to finance a non-federal share of construction, operation and maintenance costs under the requirements of Section 2211. So it is the requirements of 2211 that establish the not-to-exceed amount. 2211 requires 25%, so you cannot exceed 25%. Thank you. Yes, Your Honor. All right, thank you. You've reserved your rebuttal time. All right, we'll hear from Mr. Reisner. Thank you, Your Honor. Mr. Reisner. I think, Your Honor, that the district court made very clear the way the statute should be incorporated, interpreted. When he says that... I mean, the statute says we have to pay whatever we agreed to as non-federal cost. Subject to 2211, and of course it is. That means we can't agree to pay less than 25%. That's clearly a minimum, not a maximum. It would make no sense to stick a maximum over there and then lay out the ground on which we can support the contract. I think that's clearly true. When he says you can't... you have to benefit all these ships, the statute, and I think the briefs make this clear, I hope, there's a distinction between limited tasks that are set forth and the general support of the statute, I mean, of the contract. That's what's involved here. This is an absolutely, as the statements of feasibility and environmental impact make clear, this is a vitally important statute. I mean, excuse me, a vitally important project. This is a project where half of the... a waterway where half of the shipments to Iraq during the Iraq War came out of. It is the largest carrier of liquid products with its confluence of pipelines and so on. This statute and the projects under it are so important that our opponents here endorsed the statute and said they strongly support it. I want to emphasize that because you might not have detected that from their arguments before you. They strongly support it. Their clients benefit immensely from this. Now he says, well, you have to... you can't benefit from something that's not built. That's not true. The Corps of Engineers said that they're, you know, the larger ships you have to offload in the Gulf, the ships can't come in at night, you can't have two ships passing each other. There are serious impediments. And it's only going to get worse as the larger ships come to dominate the shipping. That's what this project is about. Why on earth would you say that those who benefit from it can't be charged, you know, if we need to pay 40% of it? Now, let me be clear that when the government negotiated that, that's not the limits of the burden on the waterway. They have to relocate utilities, relocate pipelines, they have to provide in the remediation of the lands, swamps in Louisiana and Texas, they have to require and provide that. They can't charge harbor dues for any of that. They have to spend tens of millions of dollars as a port. Mr. Reisner, I have a question about this anchorage comment that was made by the other side of the question. I thought that the deepening of the anchorage basin was specifically to help with bigger boats, bigger ships to be able to use the basin, and they were too big to use it before the deepening. So it's not just anchoring in the abstract. It actually is related to the deepening that's necessary for the bigger ships. So that increment is relevant to the fee. So is that correct or is opposing counsel correct? No, Your Honor, you're absolutely correct. I don't know where he came up with his argument, but you're absolutely correct. That was moved from 20 feet to 40 feet so that it made it possible for larger ships to go into the anchorage basin. That's of critical importance because it improved the traffic in the channel. It's next to a turning basin. One of the problems they have, as the Corps of Engineers points out, is congestion. So this anchorage basin permitted them to get out of the way, you know, and permit other ships, larger ships, to get out of the way and go by. And that is the benefits that occur through this partial construction. When you start to lower the congestion, you start to permit more traffic, reduce the littering, then as you progress along, benefits occur. But let me say, I think the statute does not contain the kind of requirements that he suggests. Sure, 25% is immediate, but you're not going to get a deal to get billions, hundreds of millions of federal money for less than that. But to say, why on earth would you say you can't agree to more than that if it's worthwhile? And that's exactly what occurred here. If that had been a maximum, it would have said so. And I don't know why on earth anybody would think the federal government would put a maximum in on what could be paid. What about Plaquemines? Say it again? The Plaquemines case, is that a problem for you here? No, I don't think so, Your Honor. I think Judge Wisdom made very clear that what was at issue was a channel with no project that was charging for emergency services, et cetera. Then they tried to argue, oh, well, you know, under the Act, you can't charge until it's completed. But the panel decided early on, look, there is no project, and there's no basis for applying a statute which was designed to cover projects to a waterway that's just arguing over whether you can charge for emergency services that you provide. He says that very clearly and decides it before he begins the discussion of the Act. I think Judge Wisdom would be the first to tell you that there was nobody before him arguing how that Act should be applied to its general terms and in its application. He and the Plaquemines, as you notice, he did express concern about the failure of the United States to maintain its ports. We're going to be way behind as you get larger tankers that can't utilize our facilities. So I don't think he... I think Judge Wisdom, God love him, would say that's dicta. Nobody was arguing to me how the statute itself was supposed to be applied. All that was at issue was whether you could apply the statute to somebody who didn't have a project, and he couldn't be clearer in saying, you don't have a project, this statute doesn't apply to you. So I don't think Plaquemines causes a problem to our function. On the saying that we can't charge the harbor dues, this is a deal that works both to the benefit of the federal government, which clearly let our projects go to, and Judge Wisdom talks about this, but unimproved for 20 years. I mean, we've been trying 20 years to improve this channel, which is the most important channel in the country, for hydrocarbons. But we can't decide the case on whether this would be a good idea, this project. So we have to decide on what it's allowed under the statute. I appreciate that, Your Honor. And I'm not... I do think it's remarkable when a project is so valuable that they support it strongly. They just don't want to pay for it. And they... I understand that. But for 20 years, our projects were unruly because the federal government, for whatever reason, wasn't going to pay the full ride. And that's what this is about. Should they pay their fair share? And I would call to your attention... ..call to your attention the fact that they talk about, well, you couldn't fairly decide how much we should... ..have to pay because you can't decide whether it's done equitably and fairly in the abstract. Well, you know... ..it's not in the abstract. If you look at... And I would urge... ..the court, if I could get you to look at... ..if I could find it. The government... I think they've forgotten this is a federal... ..federal project, federal engineering. And so everything, you know, the number of ships, the ships are calculated by the customs reported, the amount... ..excuse me, of the Coast Guard, the value of the cargos is reported by customs. You want to... Every individual ship listed by the Coast Guard, if you want to know their intimate details, you can get it from Lloyd's for $20,000 a year, which is... ..considerably less than my friends have been charging it for this, I suspect. Counsel...Counsel Opposite. So that rests on the briefs on his procedural argument, but on his statutory construction points, would you respond to those, particularly his argument disputing the 40% of costs, saying there's a limitation of the 25%, as well as his other statutory interpretation arguments? Would you respond to those? Yes. Yes, Your Honour. I think it's very clear in the context that the 25% is minimum. You can't pay less than that. But when you get to this part that says what we can bargain for, then it's broad, broad terms. The 25... Sure, the 25% applies, because you're not going to get it cheaper than that. You have to pay more than that, and there's no limitation on the government charging larger, and here we agreed to 40%. Further, the federal government extracts more. You know, we have to remove all those utilities, buy lands to the dredging, etc. Tens of millions of dollars. And so, really, I think what this statute is about is industry, which is profiting enormously off this, are they going to pay a share of it? Obviously, they don't want to. But the downside is, if they don't, the federal government is not going to do it. And let me say also, you know, they talk about, well, you can't fairly and equitably judge whether the chargers, they keep saying, oh, you know, you're charging us 10 times what the other shippers are. At the values of their cargoes, if you apply the same factor, if you say, okay, how much is what you're paying compared to percentage of the total cost, they come out at the same place. They say, oh, well, you're charging us 10 times as much as non-cargo. And, you know, that's set forth clearly. If I could suggest that it's set forth clearly that if you look at the ratios, the values of the cargo, you come out at the same place. It's about 0.6 for them, 0.65 for them, 0.66 for the other chargers. There's real parity. Now, it doesn't exist in markets there. They're making so much money with current oil and gas prices that it's even less disparity. So there's nothing to their argument that they're being treated unfairly in these matters. And to go back, again, to Plinyton charge, notice the... I think the language in the statute is unusual, but I think it's clear. It didn't say, you know, when the project is completed or a usable increment thereof. It said including, including a usable increment. And I think that the whole point of the unusual language is if you can produce a usable increment, you can start charging the fees then. The way this works, this is a federal project. We can't get ahead of them in charging fees, but we can't... We've got to be able to keep charging in order to finance the project. This is the, I think, the initial... Having the initial increment in place, it's kind of like you say, OK, I want to buy a house, I want a mortgage. You're going to have to make a down payment. That project is there. It's already benefiting the traffic in the channel. But further, with all the burdens placed upon us, we've got to keep up in construction that the district is doing. We've got to keep up with the federal assessments. We've got to be able to finance it, you know, in addition to all the relocations and things that take tens of millions of dollars. So I think it's extremely clear for this to work once the down payment is made with the usable increment, which here was $20 million, increased the convenience of the ship. Then it becomes, I think, essential that we allow it to be continued. Is it subject to the 25% minimum? Certainly it is. You can't come over and make a deal for less than 25%. And, you know, as the briefs go into depth, there is a marked difference. There are some specific aspects that are limited on whether you have to pay for them or not, which is set forth in detail in our briefs. But there is nothing that supports their position that it's a maximum. There is nothing that supports their position that we can't, once the project is underway, once it's approved by the government and kicked off, then they can charge the fees. The agreed-on fees, and we're not the one who sets the fees, it's the federal government. If you want the federal money, you've got to agree to their terms, which is what we did. And they say, oh, you voluntarily accepted them. They've been trying to improve that project for 20 years. This project's been underway for 20 years. They've spent fortune on it already. But this is a project, this is a channel that doesn't have the benefits that some do, like where they own warehouses, et cetera, lease land, or perform the services they can charge for. This is a waterway, which does a great job being a waterway, but doesn't have other resources to make money from. So they have to have the harbor dues in order to share, to provide for their share of the project. And this is, I think as our friends here will admit, this is of enormous advantage to Louisiana, Texas, great advantage to their industries, remediation of their farms and marshes. But more importantly, it's also of enormous advantage to the military, critical for their shipping, over half the shipping to Iraq went out. It's critical for the industry throughout the country. I mean, as I'm sure the Court is well familiar, there's a confluence of pipelines, refineries, et cetera, where it's important that this waterway continue to be able to serve the industry and to serve the military. So I think, and they haven't pushed their argument about their being unfairly treated, not equitably. I think the notion, if I understood the argument, they've got to have you believe that 25% is a maximum rather than a minimum, and I just don't think you can get there.  So if there are no further questions, I thank you for your attention. Thank you, sir. All right, back to Rebuttal. Appellants are willing to pay a lawful user fee. We've brought this challenge because this user fee is unlawful. I want to hit on the 25% again, Your Honors. Opposing counsel said it's not a maximum. 2236 says you can only levy fees in amounts that do not exceed the requirements of 2211. In 2211, you can voluntarily agree to more than 25%, but that doesn't mean that it is a requirement to do so. You can voluntarily agree to 40% or 50% or 60%, but the only requirement is 25%, and so that is the not-to-exceed amount in 2211. If a project or if a navigation district voluntarily agrees to go above the required 25%, they can fund that using other mechanisms, not a user fee, because remember, Your Honors, absent congressional consent, a user fee is unlawful, and the condition Congress put on the user fee is it must not exceed the requirements of 2211. So how does a navigation district fund something if they voluntarily agree to go above the 25%? They do it in the way this navigation district did so, by getting permission from the voters to pledge $250 million of normal, traditional tax revenue, not user fee revenue, tax revenue, to help fund the project. Do any of those developments affect this lawsuit? We've gotten some notes about various things that were passed or done since this all began. They do not alter the statutory interpretation. They do not alter the court's precedent. Do they alter in any way anything being moved or anything? No, Your Honor, not in our view. In our view, it just further reinforces our statutory construction point that you can agree to do more than what is required, but you can only levy the fee for what is required. Well, where does what is required? It says it cannot be that 2211 imposes a cap for the fee-based non-federal share but not the alternatively funded non-federal share because that reading, wouldn't that require an express provision that the cap, that it was an up-to-shell only? Because otherwise you're getting into that necessary issue again. Your Honor, if I can... I think the words amounts not to exceed. I'm looking at the statute and the statute says amounts not to exceed. So not to exceed is telling you this is the cap and then the question is, well, what is the cap? And then you read 2211A1AI and that section says the amount not to exceed is their share of costs under the requirements. This is the word in the statute is the requirements of section 2211. So that's how you get an amount not to exceed the requirements of 2211. Those are the two clauses from the statute that we're looking at, Your Honor, and that's how you get the cap. I also want to briefly address the point opposing counsel raised about the anchorage. If we were only being charged for the anchorage that is built and usable, we wouldn't have brought this cause of action. We have alleged that the fees being levied today are not in any way related to the anchorage. They are only related for the future unbuilt, 98% not even started portions of the project. They're to finance the next increment. No, Your Honor, the way we understand the word finance to work is, finance at its core means borrow now, pay later, right? So they can go get a loan from the bank today, but the question is when can they start charging a user fee to pay back the loan, go get the loan today, charge the user fee for increment 2 when increment 2 is complete, for increment 3 when increment 3 is complete. I don't pay back the loan all at once when I buy my house. I pay back the loan gradually over time. And so you take the loan today, but you start the payback via user fees when the relevant increment is complete. I want to conclude, Your Honor, on one point. Opposing counsel said the entire project is about benefiting bigger ships. Okay, that's true. So 2236 says if you're deepening a channel to allow bigger, deeper ships to come through, charge the fees against those bigger, deeper ships. Don't charge the fees against the smaller ships. Now we have some big ships and we have some small ships. We're fine paying a fee for our big ships. It is unlawful to levy a fee against us for our small ships. And that's the whole point behind our feature-by-feature analysis. Thank you very much for your time, Your Honors. Yes, Your Honor. It has to do with the 2011 feasibility report and the design vessel. Do you have an argument, because this was in your brief, that the district court, when it used the 2011 feasibility report, that it was wrong about what the appropriate design vessel would be, or you just didn't like the fact that it took that report and used it in 12B? Well, it's both, Your Honor. It would be inappropriate to take that in 12B, but what's worse, Your Honor, the judge did not actually accept what the report said. The report said that the design vessel is a large Suez Max tanker. And that's related to the thing you were just ending on. What is wrong with that provision of the opinion, other than putting to one side whether you can take judicial notice of report? Let's take that to one side. Is the information actually incorrect, and how does that adversely affect your client? The conclusion that the court drew is incorrect. So the information is that the design vessel is a large Suez Max tanker, a big, deep, large ship. But then the conclusion that the court drew is that the vessel used to justify this project is any ship with a shallow draft of 20 feet. So had the court accepted the factual conclusion in the engineer's report, then maybe it would have reached the correct conclusion. But what it said is because the design vessel is any ship with a draft of only 20 feet, it then said ships that are smaller than Suez Max tankers can be levied a fee as well. So if you want to levy the fee against our Suez Max tankers, fine. But if you want to levy the fee against our smaller vessels that are designated in categories substantially smaller than a Suez Max tanker, that's unlawful. Are you saying that's an issue for summary judgment? You're not really having a factual clue. You're concerned about what they're doing with the information, about that they're still levying on the smaller vessels. I'm trying to figure out what would be the relief if you were correct on this point, but still we'd have to buy that it was not equitable or fair, and we may not buy that. No, Your Honor. If we are correct that the trial court reached, well, first, is the trial court allowed to make a factual finding about what the design vessel is at the 12b posture? But you don't really quibble with the design vessel. I asked that question, and you said, oh, it's actually correct in the report. Your Honor, it may be correct in the report, but it is wrong in the trial court's opinion. The trial court did not say I accept. I guess because I have the same concern. I'm concerned about making factual findings on a 12b motion, which is the posture we're in here. But, again, what I think Judge Elrod is saying is you're not concerned that the court made a factual finding. Your concern is just that it was the wrong one. No, Your Honor. I'm concerned about both. You just wish they had gotten it right. I'm concerned about both, Your Honor. There should be no factual findings that a district court is making at the 12b posture outside of what is in our complaint. Well, they can take judicial notice of official documents about things, and there is some leeway there, and we have some case law, and whether this errs on one side or the other or not on that we'll probably have to decide, but that's a small thing. What the question is is that taking the size of the design vessel that the district court picked out of the 2011, you think that's the right size. The design vessel is the correct size that the district court should have used, so you're not, as I understand. I'm not being clear at all. The district court was wrong when it picked the design vessel. The design vessel that the district court picked is any vessel that has a draft of 20 feet. A Suez Max tanker has a draft of 48 or deeper feet. So it's said that I see this. But the report does say that and uses that as the design. The one they used is the correct one in the report. It's just you think that's wrong to use that one. I'm sorry. You go ahead and explain it again. Let me back up a few steps. A Suez Max tanker is a very large ship with a draft below 48 feet. If you are building a project to deepen the waterway from 40 feet to 48 feet to benefit the Suez Max, you can levy the fee against the Suez Max. The district court said I find the design vessel to be any ship with a draft of 20 feet, which is literally half, less than half the depth of a Suez Max tanker. The district court, in our view, reached the wrong, it's not allowed to reach a factual conclusion or a factual finding, but it reached the wrong factual finding. And that's why it's saying our ships that are much smaller than a Suez Max tanker can be levied the fee. And we submit they cannot. It's only the large Suez Max-sized ships that should be levied the fee. I don't know if I cleared that up at all, Your Honor. Is the district court's comparable in size finding? Yes. All right. Okay. So what would we do if we agreed with you? Well, so the first thing Your Honor would do— I'm not saying we do. It's not foreshadowing. Yes, I understand, Your Honor. But on that count, on the count that it must be feature-by-feature and comparable vessels, the court would reverse because of factual findings made— We don't believe it's feature-by-feature, but we just think that they used the wrong vessel. Well, Your Honor would find that we have stated a plausible cause of action and remand us back down for further proceedings. The court does not need to—we don't need to win summary judgment today. We haven't filed any motion. We're appealing the dismissal. The court just needs to— I don't care if you have anything there because they can still pick a fee that's generally applicable and that, you know, I don't mean this in a—close enough for government work, for lack of a better term. I don't mean disrespect to either anybody or the government. But they don't have to have it exactly perfect what the court said. Respectfully, we would push back. The statute does not allow that. The statute does not allow close enough for government work. The statute at 2236A3A—A3A—and there's a little i, double i, triple i, and then the text below the triple i says, only vessels at least comparable in size to those used to justify these features may be charged in this section. So there's a fact question about what is comparable in size, but only those vessels. They don't have discretion to levy the fee against things that are not comparable in size. But they justify the project overall, the vessels of that size. Yes, Your Honor, but we have ships that are substantially smaller than that size. We're saying some of our ships are comparable, some of them are comparable, and those ships should be levied a fee. But others are substantially smaller and not comparable, and that's a fact question that we can come back on at summary judgment or a finder fact should resolve at trial, but not at the 12B posture, Your Honor. All right, counsel, I think you've gotten your money's worth. Thank you, Your Honor. Pun intended, but we know it's an important case to both sides, and that's why it was expedited. We know it's important. There's a lot going on. Quick read, trying to understand stuff you all have been studying for months. So therein the questions, but we appreciate the argument. But do not get confused that expediting the appeal is tantamount to you get a decision before you get home. We will decide it as quickly as we can, but there's a lot going on in this case, and so we'll try to get it right and get it out as quickly as we can. Having said that, that completes all the oral arguments for this panel for this week.